COURT OF APPEALS OF VIRGINIA

Present: Judges O'Brien, Malveaux and Senior Judge Frank

UNPUBLISHED

FRANCHON TINSLEY

v.      Record No. 0623-20-2

ALBEMARLE COUNTY
  DEPARTMENT OF SOCIAL SERVICES                    MEMORANDUM OPINION*
                                                         PER CURIAM
FRANCHON TINSLEY                                     NOVEMBER 17, 2020

v.      Record No. 0677-20-2

ALBEMARLE COUNTY
  DEPARTMENT OF SOCIAL SERVICES


FROM THE CIRCUIT COURT OF ALBEMARLE COUNTY
Claude V. Worrell, II, Judge

(Morgan A. Cox; The Child Advocate Law Firm PLLC, on brief),
for appellant.

(Susan Baumgartner, Senior Assistant County Attorney;
B. Stephanie Commander, Guardian *ad litem* for the minor
children, on brief), for appellee.


Franchon Tinsley (mother) appeals the circuit court's orders terminating her parental rights

to two of her children and approving the foster care goal of adoption. Mother argues that the circuit

court abused its discretion by terminating her parental rights because termination was not in the

children's best interests and she had substantially remedied the conditions that led to or required the

continuation of the children's placement in foster care. She contends that the circuit court erred in

finding that the Albemarle County Department of Social Services (the Department) made

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

reasonable and appropriate efforts to assist her. Mother further asserts that the circuit court erred in approving the foster care goal of adoption because she was "ready and willing to accept custody of the children." Upon reviewing the record and briefs of the parties, we conclude that these appeals are without merit. Accordingly, we summarily affirm the decision of the circuit court. See Rule 5A:27.

## BACKGROUND[1]

"On appeal from the termination of parental rights, this Court is required to review the evidence in the light most favorable to the party prevailing in the circuit court." Yafi v. Stafford Dep't of Soc. Servs., 69 Va. App. 539, 550-51 (2018) (quoting Thach v. Arlington Cnty. Dep't of Hum. Servs., 63 Va. App. 157, 168 (2014)).

Mother is the biological parent to C.S. and C.D., who are the subject of this appeal.[2] On February 6, 2017, the Department opened a family assessment after receiving a report that C.D., who was eight years old, allegedly had witnessed domestic violence between mother and her boyfriend and that mother's boyfriend allegedly had hit and punched C.D.[3] After the incident, the maternal grandmother was granted physical custody of C.D. and was ordered to monitor mother's visitation with him.[4]

---

[1] The records in these cases were sealed. Nevertheless, the appeal necessitates unsealing relevant portions of the records to resolve the issues appellant has raised. Evidence and factual findings below that are necessary to address the assignments of error are included in this opinion. Consequently, "[t]o the extent that this opinion mentions facts found in the sealed record, we unseal only those specific facts, finding them relevant to the decision in this case. The remainder of the previously sealed record remains sealed." Levick v. MacDougall, 294 Va. 283, 288 n.1 (2017).

[2] Mother has other children who are not the subject of this appeal. C.D.'s father is deceased. C.S.'s father was not a part of C.S.'s life and did not engage with the Department.

[3] Mother's boyfriend denied hitting C.D. or mother.

[4] Mother and the maternal grandmother already had joint legal custody of C.D.

A couple of weeks later, the Department discovered that the maternal grandmother was taking "various medications and drinking alcohol" while caring for C.D. On March 22, 2017, following a custody hearing, mother and the maternal grandmother agreed that C.D. would be placed temporarily with his maternal aunt. The Department investigated the maternal aunt and found her to be an acceptable placement, so C.D. moved to her residence.

Meanwhile, from February 6, 2017, until March 31, 2017, mother and C.S. lived in a shelter. Thereafter, she and C.S. moved five times to different hotels. The Department made several appointments with mother to develop a plan to prevent foster care; however, mother missed her appointments or showed up late.

On April 14, 2017, the Department removed C.S., who was fourteen months old, from mother's custody. On May 11, 2017, C.D.'s maternal aunt signed an entrustment agreement because she could no longer care for C.D.; consequently, the Department assumed custody of C.D. and he entered foster care. The Albemarle County Juvenile and Domestic Relations District Court (the JDR court) adjudicated that C.S. and C.D. were abused or neglected children and entered dispositional orders.

When C.S. entered foster care, he was "completely non-verbal, was not yet mobile, and presented with a very flat effect." The Department referred C.S. to speech and physical therapy.

When C.D. entered foster care, he "struggle[d] with his behaviors in school" and "had a lot of fears" at the foster home. C.D. was diagnosed with anxiety and attention deficit hyperactivity disorder and was prescribed medication. The Department referred C.D. to counseling and mentoring services.

After the children entered foster care, the Department reviewed with mother the requirements she needed to complete before the children could be reunited with her. First, mother needed to obtain and maintain safe and stable housing. A few months after the children

entered foster care, mother reported that she lived with two of her uncles, who owned a house in Charlottesville.[5] The Department told mother that all adults over the age of eighteen would have to be fingerprinted and undergo background checks before the children could live at the home, but mother did not ensure that her uncles complied with the requests. The Department visited the four-bedroom home in December 2017, but mother's uncles were not present, which precluded the Department from verifying that mother lived at the home.

In addition to stable housing, the Department required mother to participate in counseling and a psychological evaluation. Mother had reported to the Department that she had epilepsy, attention deficit disorder, and depression. The Department assisted mother in scheduling and transporting her to the first appointment for the psychological evaluation, but she left early and did not appear for any of the other five rescheduled appointments. Then, the Department scheduled an appointment with a different psychologist to evaluate mother. Mother attended one appointment for thirty minutes and did not appear for the other "four or five" rescheduled appointments with the second psychologist.

Another one of the Department's requirements was that mother had to demonstrate that she could provide for "the emotional, behavioral, financial and physical well-being of the children." To help achieve that goal, the Department referred mother to a service offering a parent coach/family mentor, who could help her with transportation, managing her appointments, budgeting, and housing. Mother attended intake but did not follow through with the process to obtain a parent coach/family mentor.

After the children entered foster care, the Department arranged for weekly supervised visitation between mother and the children. The Department informed mother that she needed to be on time to all appointments and visitations. Mother, however, usually arrived late to the

---

[5] Mother's stepmother also lived at the house at times.

visits. Mother's failure to follow the service plan and be timely for her visits prevented her from progressing beyond the one-hour supervised visits.

The Department petitioned to change the foster care goal because mother did not complete her psychological evaluation, participate in therapy or the parent mentoring service, and was frequently late to visitations and her appointments. Mother did not comply with the Department's requests to verify her housing situation and ensure the completion of background checks for her uncles who lived in the home. On February 21, 2018, the JDR court approved the change in foster care goal from return home to relative placement with a concurrent goal of adoption.

In February 2018, after C.D. had drowned his foster family's puppy, the Department moved C.D. to a residential treatment home in Chesterfield. There, he received intensive therapy. Mother initially visited C.D. in the group home with the assistance of the social worker. Mother subsequently moved to Richmond and lived with a friend. Once it was no longer necessary for the social worker to attend the visits, mother began to miss numerous visits, which upset C.D.; however, she kept in regular contact with him by telephone. C.D. stayed in the group home for approximately one year before he moved into a home of a "very close family friend."

Because mother had not completed the Department's requirements for the children to be returned to her custody, the Department filed petitions to approve the foster care goal of adoption and terminate mother's parental rights to C.S. and C.D. The JDR court approved the foster care goal of adoption and terminated mother's parental rights to C.S. and C.D. Mother did not appear at the JDR court's termination hearing, but she did appeal the JDR court's rulings to the circuit court.

On August 30, 2019, the circuit court dismissed mother's appeal of the termination of her parental rights to C.S. and C.D. because mother failed to appear for the circuit court hearing. Mother filed a motion to reconsider and explained that she was not present at the August 30, 2019 hearing because she had been "recently hospitalized for seizures and other medical issues." The circuit court granted, over the Department's objection, mother's motion to reconsider and rescheduled the hearing for February 26, 2020.

At the circuit court hearing, the Department presented evidence that mother had not complied with its requirements for the children to be returned to her custody. For example, mother never completed the required psychological evaluation. Although mother reported attending counseling, the Department was never able to confirm her attendance. Mother also failed to follow through with the parent mentoring services. Mother never produced a budget nor provided information regarding her daycare plans, other than to say that she had people who "might be able to take care" of the children. Mother also did not demonstrate that she could meet or understand the children's basic needs, including their mental health. The social worker testified that over the three years that the children had been in foster care, mother had not obtained and maintained a stable home, nor had she addressed her mental health.

In addition, the Department presented evidence about the children's well-being. The social worker testified that C.S. was "doing really well" in foster care and had bonded with the foster family with whom he had been living since March 2018. C.S. had completed his speech and physical therapy and was receiving occupational therapy after being diagnosed with a sensory disorder. At the time of the circuit court hearing, mother had not seen C.S. for "about a year." The Department had placed C.D. with a family friend in May 2019. C.D. was receiving in-home counseling, medication management, individual therapy, and therapeutic day treatment at school.

Although mother listed her uncles' house as her most recent mailing address, the Department could not verify that mother was living there. At the hearing, mother attempted to clarify her housing situation. She testified that she was "an heir to the home" in Charlottesville where her uncles lived and that she had been "born in the home." She admitted that she was not on the deed to the home. For "some weeks" before the circuit court hearing, mother, however, was living in a transitional home in Richmond and was receiving assistance from a community organization. Before the transitional home, she had been living with friends or family in Richmond and Charlottesville. When the circuit court asked mother why she did not stay permanently at her uncles' home in Charlottesville, mother responded that her "stuff" was at their home and she did stay there "for a little while." If she were to receive custody of the children, she planned to live with them in her uncles' house. She also anticipated being able to secure employment in Charlottesville.

Mother also offered explanations for why she did not comply with all the Department's requirements. She explained that with respect to the Department doing a background check on her uncles, she thought she had complied after providing the Department with her uncles' telephone numbers. She admitted that she was "not sure" if she gave her uncles the contact information for the Department. With respect to the parenting mentor, she had assumed that the parenting mentor would contact her after intake, and she could not recall receiving a phone number to contact. Mother explained that she did not complete the psychological evaluation with the first psychologist because she "did not feel comfortable." She admitted that she did not complete the psychological evaluation with the second psychologist either.

After hearing the evidence and argument, the circuit court terminated mother's parental rights to C.S. and C.D. under Code § 16.1-283(C)(2). On April 8, 2020, the circuit court entered

orders approving the foster care goal of adoption and terminating mother's parental rights to C.S. and C.D. These appeals followed.

ANALYSIS

"On review, '[a] trial court is presumed to have thoroughly weighed all the evidence, considered the statutory requirements, and made its determination based on the child's best interests.'" Castillo v. Loudoun Cnty. Dep't of Fam. Servs., 68 Va. App. 547, 558 (2018) (quoting Logan v. Fairfax Cnty. Dep't of Hum. Dev., 13 Va. App. 123, 128 (1991)). "Where, as here, the court hears the evidence *ore tenus*, its finding is entitled to great weight and will not be disturbed on appeal unless plainly wrong or without evidence to support it." Fauquier Cnty. Dep't of Soc. Servs. v. Ridgeway, 59 Va. App. 185, 190 (2011) (quoting Martin v. Pittsylvania Cnty. Dep't of Soc. Servs., 3 Va. App. 15, 20 (1986)).

Mother argues that the circuit court erred in terminating her parental rights. She contends that she had "remedied the two conditions that initially brought her children into care, namely homelessness and exposure to domestic violence." She further asserts that with respect to the psychological evaluation, she had signed a release for the Department to have access to her past mental health records at the University of Virginia. She also contends that she had complied with the intake process for the parent mentoring services, but a parent mentor was never assigned to her.

The circuit court terminated mother's parental rights under Code § 16.1-283(C)(2), which states that a court may terminate parental rights if:

> The parent or parents, without good cause, have been unwilling or unable within a reasonable period of time not to exceed 12 months from the date the child was placed in foster care to remedy substantially the conditions which led to or required continuation of the child's foster care placement, notwithstanding the reasonable and appropriate efforts of social, medical, mental health or other rehabilitative agencies to such end.

"[S]ubsection C termination decisions hinge not so much on the magnitude of the problem that created the original danger to the child, but on the demonstrated failure of the parent to make reasonable changes." Yafi, 69 Va. App. at 552 (quoting Toms v. Hanover Dep't of Soc. Servs., 46 Va. App. 257, 271 (2005)).

The Department offered mother numerous services, including referrals for a psychological evaluation and a parenting mentor, but mother did not complete the services. "'Reasonable and appropriate' efforts can only be judged with reference to the circumstances of a particular case. Thus, a court must determine what constitutes reasonable and appropriate efforts given the facts before the court." Harrison v. Tazewell Cnty. Dep't of Soc. Servs., 42 Va. App. 149, 163 (2004) (quoting Ferguson v. Stafford Cnty. Dep't of Soc. Servs., 14 Va. App. 333, 338 (1992)). The Department "is not required to force its services upon an unwilling or disinterested parent." Tackett v. Arlington Cnty. Dep't of Hum. Servs., 62 Va. App. 296, 323 (2013) (quoting Harris v. Lynchburg Div. of Soc. Servs., 223 Va. 235, 243 (1982)); see also Logan, 13 Va. App. at 130.

The Department referred mother to two psychologists for a current psychological evaluation because it wanted to "address any mental health needs that might be present with supportive services." Mother refused to complete the psychological evaluations. She met with one evaluator for one hour and another for thirty minutes. Both evaluators rescheduled numerous appointments for her, but she did not appear. Mother testified that she signed a release for the Department to have access to her past records at the University of Virginia, which she thought was sufficient despite the Department's numerous requests for a current psychological evaluation.

The Department also referred mother to an agency that provided parenting mentors who could help her with "practical issues like budgeting, transportation, housing, [and] scheduling her

appointments." Mother attended the intake appointment but never followed through with the process. At trial, mother maintained that she thought the agency would contact her. She never contacted the agency or the social worker about the parent mentor.

Mother also never complied with the Department's requirement that she obtain and maintain stable housing. While the children were in foster care, mother lived with friends and family and in transitional housing. She testified that if the children were returned to her care, they could live with her uncles; however, mother was not living there at the time of the circuit court hearing.

At the time of the circuit court hearing, C.S. and C.D. had been in foster care for approximately three years. Both children were in adoptive homes and receiving necessary services. Mother had not complied with the Department's requirements and was not in a position to resume custody of the children. The circuit court found that mother was "unable" and "lack[ed] the capacity" to remedy the conditions that led to the children's continued placement in foster care. "It is clearly not in the best interests of a child to spend a lengthy period of time waiting to find out when, or even if, a parent will be capable of resuming his [or her] responsibilities." Tackett, 62 Va. App. at 322 (quoting Kaywood v. Halifax Cnty. Dep't of Soc. Servs., 10 Va. App. 535, 540 (1990)). Considering the totality of the circumstances, the circuit court did not err in terminating mother's parental rights under Code § 16.1-283(C)(2).

With respect to mother's challenge of the foster care goal of adoption, "[o]ur decision to affirm the termination order necessarily subsumes this aspect of [her] appeal because a preponderance-of-the-evidence standard governs judicial modifications of foster care plans." Toms, 46 Va. App. at 265 n.3.

CONCLUSION

For the foregoing reasons, the circuit court's ruling is summarily affirmed.  Rule 5A:27.

<u>Affirmed.</u>